ERNEST L. CAFLISCH, Respondent, *v.* CLYMER STATE BANK and Others, Appellants.

Fourth Department, June 27, 1929.

*Jackson, Herrick, Durkin & Leet,* for the appellant Clymer State Bank.

*Ottaway & Munson* [*Robert H. Jackson* and *John E. Durkin* with them on the brief], for the appellants Garret H. Tenpas and Lena Tenpas.

*C. R. Crosby* [*Nelson J. Palmer* of counsel], for the respondent.

THOMPSON, J. At the time of decedent's death, insolvent, defendant bank held collateral mortgages against his real estate for $7,500. Administration was taken out by the widow and Henry F. Young, cashier and director of the bank (now deceased), who had active charge of its affairs and business. Shortly after this, at the instance of the cashier-administrator, the widow-administrator told the president of the bank that plaintiff had offered her $30 an acre for ten acres of the mortgaged premises. The president approved this offer, said that upon payment of the avails of the sale to the bank it would release the premises from the lien of the mortgages, and that plaintiff should have a deed thereof, free and clear from the lien of the bank's mortgages. Plaintiff

talked with three of the bank's directors about it; they looked the land over, measured it up and staked it out before the contract was made. Whereupon the administrators entered into a written contract with plaintiff, by the terms of which $200 was to be paid down, and the balance of $100 upon delivery by the parties of the first part to parties of the second part of a deed of the premises, pursuant to orders of the Surrogate's Court of Chautauqua county, in proceedings for the sale of said premises. The contract was acknowledged by the parties thereto before the assistant cashier of the bank. Plaintiff then and there paid the sum of $200 on said contract to the administrators and the administrators paid this sum to the bank, which accepted it and applied it on the mortgages. Thereupon plaintiff went into possession of the land and improved it to the extent of $400.

Thereafter the plaintiff tendered the remaining $100 to the bank, and demanded a deed and release of the premises, which the bank refused. After this the bank employed and paid one Morris, an attorney, to settle the estate of said decedent in the Surrogate's Court, and to institute a proceeding for the sale of the real property of decedent for the payment of debts. The record does not disclose that there were creditors other than the bank. Plaintiff was not made a party to this proceeding but appeared in person upon the return of the citation for the purpose of protecting his rights, and an agreement was entered into between plaintiff and the bank, by virtue of which plaintiff withdrew his objections to the sale, and the bank undertook to bid in the premises, to give him a deed thereof, and to release the land from the mortgages upon the payment of the balance of $100. The premises were thereafter sold to the bank for the sum of $1, but it refused to carry out its agreement with plaintiff and sold the property, with other lands not involved in this action, to the defendant Tenpas for the sum of $1,500. The bank has ever since refused to carry out its agreement, finally officially declining to release " the 10 acre piece of land which *Young* agreed to sell Caflisch " by action of the directors, intelligence of which was communicated to plaintiff in a letter bearing its signature.

The defendants Tenpas occupy the same position that the bank does. After the execution of the contract, Mr. Tenpas told the widow-administrator that he would give her " twice as much for this land as Mr. Caflisch did; " learning of this, Caflisch offered to release his claim and let Tenpas have the land, which offer Tenpas finally rejected, saying: " He guessed he couldn't use it " and " let Mr. Caflisch have it." Thereafter the Tenpases had several notices in writing served upon them by plaintiff, setting forth the particulars

of his claim of ownership of the land, and are also charged with such notice by his possession and open and visible improvement of the premises. They were put upon their inquiry and will be presumed to have pursued it until they became cognizant of the facts. (Gerard Titles Real Estate [5th ed.], 719; 31 Cyc. 938; 46 C. J. 547; 13 L. R. A. [N. S.] 49; *Holland* v. *Brown,* 140 N. Y. 344; *Phelan* v. *Brady,* 119 id. 587.)

Thus it is that defendants must rely entirely upon the title they got from the bank, with and subject to such notice and knowledge of the facts proper inquiry would have developed.

This is an action in equity and not an action at law. Appellant insists that the land contract was beyond the power of the administrators to make, and that the various acts of the officers and directors of the bank, which are set forth in the testimony, were performed without right or authority to bind the bank. It is true that plaintiff has no remedy in contract, but that is not the theory upon which the action was brought or tried. His action is based in equity and he may succeed if he has shown himself entitled to equitable relief. It seems that we have here a definite and clear course of dealing between plaintiff and defendant bank by which the bank, being in a position to control the disposition of the land in suit, undertook to procure title and ownership thereof for the plaintiff in consideration of the plaintiff's rendering the sums agreed upon to the administrators, and thus to the bank to be credited upon decedent owner's indebtedness to the bank, and that plaintiff gave faith to the arrangement and kept his part of it. It plainly appears that the sale of the real estate to pay debts was contemplated, and that the bank undertook and intended to put the title to this ten-acre piece through the proper orders of the Surrogate's Court into the name of the plaintiff upon receiving the amounts mentioned for application upon decedent's indebtedness to it. It received the money and applied it on the mortgages. The bank instituted and carried on the proceeding and obtained title to the land itself. Induced by its conduct and relying on its promise, plaintiff withdrew his objections to the decree for the sale, and refrained from bidding at the sale. In such cases, while the law may withhold its processes, equity will provide a remedy.

By the conduct of defendant bank, relied and acted upon by plaintiff, and known to defendant Tenpas when he bought the land from it, the defendants are estopped from denying the title and right of plaintiff in the premises in suit and from asserting a contrary title thereto in them or either of them. Moreover equity will not permit or sustain the challenges of defendant to the bases

of plaintiff's claim and title in cases of this sort. (Civ. Prac. Act, §§ 273, 274; *Feinberg* v. *Allen*, 143 App. Div. 866, 868; affd., 208 N. Y. 215.)

Plaintiff is entitled to a judgment requiring the bank and defendants Tenpas to join in a deed of the premises, free and clear from the incumbrance of the mortgages, upon payment by the plaintiff to the bank of the sum of $100; or in the alternative that he recover of the defendants the sum of $600.

Additional findings are made; the judgment should be amended accordingly, and as amended, affirmed, with costs to respondent.

All concur, except SEARS, P. J., and CROUCH, J., who dissent and vote for reversal on the ground that the facts found do not sustain the conclusions of law nor the judgment entered. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Judgment affirmed, with costs. New additional findings made.